IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 13-30070-DRH |
| | ) | |
| NEIL E. PURDY, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>GOVERNMENT'S MOTION TO STAY ORDER OF RELEASE AND FOR *DE NOVO* REVIEW OF RELEASE ORDER PURSUANT TO 18 U.S.C. §3145(a)</u>**

The United States of America, by and through its attorneys, Stephen R. Wigginton, United States Attorney for the Southern District of Illinois, and Angela Scott, Assistant United States Attorney, requests that this Court stay the release of Defendant Neil Purdy from the custody of the United States Marshals Service and to hold a hearing to review the defendant's anticipated release from the custody of the United States Marshals Service on Friday, January 17, 2014, pursuant to 18 U.S.C. §3145(a). In support of this motion, the Government states as follows:

1.  On April 18, 2013, a Federal Grand Jury returned a two-count Indictment charging the defendant with receipt and possession of visual depictions of minors engaged in sexually explicit conduct. Purdy was arraigned on that Indictment on April 26, 2013. A hearing on the Government's Motion to Detain was scheduled for May 3, 2013.

2.  On May 3, 2013, Magistrate Judge Clifford J. Proud granted the Government's motion to detain the defendant, noting in its order that the defendant "reserved the right to file a future motion for hearing on release or bond." R. 15. At the time of the arraignment and

detention hearing, the defendant was serving a 180-day sentence in Monroe County, Illinois, for Criminal Sexual Abuse involving the fourteen (14) year old daughter (hereafter "S.S.") of his ex-girlfriend, identified herein as D.S., who was living with the defendant at the time of the abuse.

3.     On December 23, 2013, the defendant filed a motion for release from custody, noting (1) the defendant has served his state sentence, (2) the defendant can reside with his father in Robinson, Illinois, (3) the defendant complied with all prior requirements imposed on him pending his negotiated plea in Monroe County, Illinois, (4) the defendant will refrain from using the internet and will abide by all restrictions placed upon him by this Court as to his use of computers, and, finally, (5) the defendant can be appropriately monitored by electronic devices.

4.     On January 10, 2013, the defendant pled guilty to both counts of the indictment before the Honorable Magistrate Judge Donald G. Wilkerson.  Magistrate Judge Wilkerson filed a Report and Recommendation on that same date, recommending, *inter alia*, that the guilty plea be accepted and that the defendant be adjudicated guilty on both counts of the Indictment.  The parties have fourteen days to object to this Report and Recommendation, thus, any objections would have to be filed on or before January 24, 2014.  If no objections are filed by either party, the Report and Recommendation presumably will be adopted by this Court shortly after that date.

5.     A hearing was then held on the defendant's motion for release.  Magistrate Judge Wilkerson informed the parties that, because the guilty plea had not been accepted by this Court, that detention would be considered under Title 18, United States Code, Section 3142 rather than Section 3143 which would apply when a defendant requests release pending sentence.  Both parties agreed that this standard should apply and proceeded to present evidence as to whether

the defendant should be detained. After hearing the evidence, Magistrate Judge Wilkerson indicated that he was going to reserve ruling on the Government's motion to detain pending a full report by Pretrial Services. At this hearing, Pretrial Services indicated to both parties that its initial recommendation would be that the defendant be released with conditions. Today, the undersigned AUSA was notified that Defendant Purdy would be released tomorrow with conditions. The Government has not seen the full report of Pretrial Services but can only assume that its recommendation remained the same.

6. Pursuant to Title 18, United States Code, Section 3142, a defendant is presumed to be a danger to the community and a flight risk if the offense is a crime of violence or if the offense involves a minor victim but is not otherwise a crime of violence. 18 U.S.C. §3142(e)(2), (f)(1). This defendant may offer evidence to rebut this presumption. A "crime of violence, as defined by 18 U.S.C. §3156(a)(4)(c), includes any felony under chapter 110. Receipt and Possession of Visual Depictions of Minors Engaged in Sexually Explicit Conduct, (18 U.S.C. §§2252(a)2 and (a)(4)(B)) are both offenses found in chapter 110. Defendant Purdy, therefore, was presumed to be a danger to the community and a risk of flight, and was required to offer evidence to rebut this presumption. It is the Government's position that the evidence offered by the defendant was not sufficient to rebut the presumption that he is either a danger to the community or that he is a risk of flight.

7. With respect to the defendant's danger to others and the community, the Government proffered that, on February 7, 2012, the Columbia Police Department was contacted by D.S., the defendant's former live-in girlfriend. D.S., who is currently residing in another state, told the officers that the defendant molested her 14 year old daughter, S.S., while they were

living with him in Illinois. The defendant was 27 years old at the time. The incident was revealed when S.S. came home from school and went into the bathroom and began crying. D.S. went into the bathroom and spoke with S.S. D.S. said that the incident occurred in December 2011 but that she was afraid to report it at that time because she was afraid of Purdy. She said that Purdy was very controlling, a member of the Navy Reserve, and that he had recently purchased a AR-15 firearm that he was to have picked up the week after she left. She also noted that, at the time the incident was revealed, she had no money, a car that needed to be repaired, and nowhere to go. She said that, as soon as she was able, she fled to another state while the defendant was at work, leaving most of her possessions behind.

      Moreover, D.S. told the officers that, while living with the defendant, she once saw him google the phrase "where can I find really young porn." She said that she confronted him, asking him "how long have you had this little problem," and that the defendant responded "about 3 years." D.S. also admitted confronting Purdy about the abuse of his daughter, and that Purdy responded "if she said it happened, then it must have happened." A CAC interview was conducted of S.S., and she confirmed that Purdy abused her by rubbing her genital area above her jeans for approximately one (1) minute while they were sitting together on the couch. S.S. said that the defendant had only touched her inappropriately on that once occasion. Defendant was convicted of the offense of criminal sexual abuse based on this incident and sentenced to a total of 180 days' imprisonment to be followed by four (4) years of probation. D.S. has expressed her concern that the defendant might try to find or contact her and/or her daughter if he learns where she now lives.

8.      When interviewed, the defendant eventually admitted abusing S.S. but said that he "must have been drunk" to have done it. He admitted that it was a mistake, that he had a "problem," and that his actions were wrong. He tried to mitigate his behavior, however, by claiming that he must have been drunk when it happened even though, as he informed the officers, he rarely drank to excess. He said that he touched S.S.'s vagina outside her jeans for about 30 seconds and that, afterwards, S.S. did not say anything, she just got up and went upstairs. He told the officers that, "to his knowledge," he had only touched S.S. inappropriately one time. Despite admitting that his actions were wrong and a mistake, the defendant never showed any remorse for his actions or for the effect of his actions on either D.S. or S.S. Instead, the defendant was more concerned about how these charges would affect his military career.

9.      During the voluntary interview on February 16, 2012, the officers also questioned Purdy about whether there were any visual depictions of minors engaged in sexually explicit conduct located on his laptop computer. He initially indicated that the images and/or videos that he looked at were "not necessarily child pornography" because the websites said that the girls were 18. He did admit, however, that the girls looked younger than 18. He said that he saved these images and/or videos in a folder marked "private," and that there were approximately 10 to 15 videos of minors engaged in sexually explicit conduct on his laptop computer. The defendant gave the officers consent to search his laptop computer and escorted them to his home to retrieve it. When they returned, the interview continued. Purdy told the officers that the images and/or videos would be under his username, and that he used a file sharing program to search for these images and/or videos, using terms that are commonly used by collectors of child pornography to locate this material. In addition to the videos he mentioned above, Purdy estimated that he had

5

less than 20 images of minors engaged in sexually explicit conduct on the laptop computer. Purdy stated that he saved the images and/or videos of minors engaged in sexually explicit behavior to his laptop computer because these images and/or videos were not as "readily accessible" as other pornography.

10. In addition to being presumed to be a danger to the community, the defendant, by his own words, supports the conclusion that he is a danger to the community. When confronted about searching for "really young porn" and asked how long he had had this "problem," the defendant replied "about three (3) years." He also admitted to the interviewing officers that he had a problem, and that he knew it was wrong to have touched S.S. the way he did, but then tried to justify it by claiming that he must have been drunk. The defendant committed a hands-on offense and has shown no remorse for his actions. One wonders if Purdy would have attempted to molest S.S. again had she not reported the incident to her mother, given his "problem" and the fact that he specifically mentioned that S.S. did not say anything after he touched her.

Moreover, the actions of D.S. also support the fact that the defendant is a danger to others and the community. D.S. said that she was initially too afraid to report the incident because she was afraid of the defendant, had no money, a car that needed to be repaired, and nowhere to go. She also told the officer that Purdy was very controlling, and that he had recently purchased an AR-15 firearm that he was to have picked up the week after she left, and that he was in the Navy Reserve. She only called the Columbia Police Department after her and her family left while the defendant was at work, leaving their possessions that would not fit in her car at his apartment, and were safely located in another state. She has also expressed concern about the defendant finding out where she now lives.

11.     Moreover, the evidence also supports the presumption that the defendant is a flight risk. The defendant now faces an anticipated sentence of 135-168 months.[1] Such a lengthy sentence is surely an incentive to flee. In addition, as reported by D.S. and confirmed by the defendant, Purdy was an active member in the Navy Reserve until his arrest in the instant offense. According to Purdy, his position involved counter-intelligence and, as he stated, "tracking down terrorists while overseas." He told the officers that he spent four years on active duty and six years in the reserves, and that he currently had Top Secret Clearance and had had it for over 10 years (The defendant's Top Secret clearance was removed after his arrest, and, it is the undersigned AUSA's belief, that discharge proceedings began immediately after the defendant's indictment in the instant offense). The defendant therefore has the means and the capability to flee even if he was put on an ankle bracelet. If it is true that he worked in counter-intelligence (a fact the undersigned AUSA could not get a Navy JAG Officer to either confirm or deny), he, more than a regular defendant or a member of the military with different training, has the ability and resources to flee.

12.     The factors cited and argued by the defendant, such as the fact that he can live with his father who lives in Robinson, Illinois, and that he has served his state sentence and apparently complied with any conditions they imposed prior to his guilty plea are simply not sufficient to rebut the presumption that he is a danger to others, specifically D.S. and S.S., and the community and a risk of flight. We do not know what conditions, if any, were imposed on the defendant pending his negotiated state plea. We do know, however, that he certainly was not

---

1 The Government believes that it may have erred in its initial calculation in the filed Notice of Elements of Offense, Statutory Penalties, and Advisory Guideline Range, in which it anticipated that the defendant's advisory guideline range would be 168-210 months.

facing the amount of time he now faces - - time that he will have to serve in a federal prison, not a county jail. As for the defendant's claim that he will comply with all conditions imposed upon him, and that he can be effectively monitored with electronic devices, this, again, does not mitigate either his danger to the community or his risk of flight. Any defendant can stand before the Court and state that he will comply with conditions so this evidence offers nothing in the way of rebutting the presumption. The defendant was incarcerated prior to the federal indictment and might not have known that he was facing federal charges, and therefore chose to comply with the state conditions under the mistaken belief that he would be released after a short amount of time and resume his life as it was. This is supported by the fact that he never contacted anyone in his Navy Reserve outfit to let them know of the State charges that he faced or that he had been investigated for the receipt and possession of child pornography. In fact, the defendant still had Top Secret clearance when the Government notified his unit of the federal indictment, as well as his conviction in Monroe County of Criminal Sexual Abuse.

The defendant now knows the potential sentence he faces, as well as the individual who led the police to investigate him regarding both the molestation of S.S., as well as the child pornography ultimately found on his computer. If the defendant is released to live with his father, since he is not employed or in any type of therapy, he will have over four (4) months to do nothing but try to extract information as to D.S.'s current whereabouts and/or try to contact her and/or to plot an escape. Such information would certainly alarm D.S. who was under the belief, as was the Government, that the defendant would remain detained pending his placement in the Bureau of Prisons. Unfortunately, the Government has not been able to reach D.S. to let her know of the possibility of the defendant's release. Because the defendant has not offered

sufficient evidence to rebut the presumption that he should be detained, this Court should stay the defendant's release from federal custody and hold a hearing on the matter so it may review Magistrate Judge Wilkerson's Order of Release.

13. Moreover, when this Court adopts Magistrate Judge Wilkerson's Report and Recommendation and adjudicates the defendant guilty of the charged offenses, a different standard will apply. Rather than look at §3142, the defendant's request for relief must be analyzed pursuant to §3143(a)(2) which applies when a defendant has been found guilty of a crime of violence and is awaiting sentencing.

14. Title 18, United States Code, Section 3143(a)(2) provides that:

> [T]he judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless --
>     (A)(i)  the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>     (ii) *an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person*; *and*
>     (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. 3143(a)(2) (emphasis added).

15. As discussed above, both charges fall under Chapter 110 and therefore considered crimes of violence. Consequently, detention is mandatory pending sentencing unless one of exceptions set forth in the statute applies. *United States v. Herrera-Soto*, 961 F.2d 645, 646 (7th Cir. 1992). *See also United States v. Peel*, No. 06-30049-WDS, 2007 WL 1021974, at *2 (S.D. Ill. April 3, 2007). In this case, neither exception applies. With respect to subsection (A)(i), given that Magistrate Judge Wilkerson has found that defendant entered a knowing and voluntary

guilty plea, and has recommended that his guilty plea be accepted by this Court, there is not a substantial likelihood that a motion for acquittal will be granted. In addition, the Government anticipates that the defendant's sentencing range will be 135-168 months, and the Government will recommend a sentence of incarceration. Thus, subsection (A)(ii) also does not apply. Because the defendant cannot establish that he is eligible for release pursuant to §3143(a)(2), he should be detained pending sentencing.

16. Title 18, United States Code, Section 3145(c), however, may offer a narrow "avenue of relief" from the mandatory detention provision of §3143(a)(2) if the defendant can meet the requirements of §3143(a)(1) ***and*** establish that there are "exceptional circumstances" warranting release. *Peel*, 2007 WL 1021974, at *3 (*citing Herrera-Soto*, 961 F.2d at 647). To meet the requirements of §3143(a)(1), this Court must find, by clear and convincing evidence, that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released on bond pending sentencing. 18 U.S.C. §3143(a)(1).

17. As set forth more fully above, the evidence clearly supports a finding that the defendant is both a flight risk as well as a danger to any other persons (D.S. and/or S.S.) and the community. Thus, the defendant cannot satisfy the dictates of §3143(a)(1), and should be detained.

18. Even if this Court were to find that the defendant met the threshold requirements of §3143(a)(1), a factor the Government certainly does not concede, the defendant must still satisfy the dictates of 18 U.S.C. §3145(c) which provides that "[a] person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the

judicial officer, *if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.* 18 U.S.C. §3145(c) (emphasis added). In *Hererra-Soto*, the Seventh Circuit agreed with the Second Circuit's definition of "exceptional circumstances" as "'a unique combination of circumstances giving rise to situations that are out of the ordinary.'" 961 F.2d at 427 (*quoting United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991)). There is absolutely nothing in the defendant's motion that would warrant exceptional circumstances that would justify his release pending sentencing. The fact that the defendant has a place to live if released on bond, has apparently served the entirety of his state sentence for criminal sexual abuse, complied with any conditions imposed by the State prior to his guilty plea to Criminal Sexual Abuse and promises to comply with any restrictions imposed on him by this Honorable Court certainly are not "a unique combination of circumstances giving rise to [a] situation[] that [is] out of the ordinary.'" 961 F.2d at 427.

For example, in *Peel*, 2007 WL 1021974, at *3-4, the district court found that the defendant's convictions for possession of child pornography warranted mandatory detention for the defendant after a jury trial convicting him of multiple offenses. The defendant filed a motion to reconsider citing what he believed to be exceptional circumstances warranting his release pending sentencing, specifically that: (1) he was unlikely to recidivate and there was no evidence he engaged in any other sexual acts involving minors, (2) the publicity in the case would likely subject him to harm from other inmates, and (3) he had substantial grounds for appeal. Specifically, the district court found that none of the reasons given by the defendant to support Peel's request for relief were "exceptional" or novel. The same is true here. None of the factors cited by the defendant, either individually or in combination, constitute exceptional

circumstances that would warrant his release pending sentencing. *See also United States v. Little*, 485 F.3d 1210, 1210-1211 (8th Cir. 2007) (Court of Appeals held that, *inter alia*, the defendant's cooperation in the investigation, including voluntarily giving incriminating statements, consent to the seizure of his computer, full compliance with pretrial release conditions, and timely appearance at all court proceedings were each and in combination not found to be an exceptional circumstance, and defining "exceptional" as "clearly out of the ordinary, uncommon, or rare."); *United States v. Larue*, 478 F.3d 924, 925-926 (8th Cir. 2007) (Court of Appeals held that, *inter alia*, the defendant's compliance with the terms of pretrial release, absence of criminal record, payment of child support for his two children, medication regimen for mental health issues, ongoing employment, and the fact that his conviction for attempting to induce a minor to sexual activity might subject him to violence in prison did not rise to the level of exceptional circumstances.).

WHEREFORE, the United States respectfully requests that this Court stay Defendant Purdy's anticipated release on Friday, January 17, 2014, and order that the defendant remain detained pending a review of Magistrate Judge Wilkerson's finding that the defendant should be released on bond pending sentencing.

        Respectfully submitted,

        STEPHEN R. WIGGINTON
        United States Attorney

        s/*Angela Scott*
        ANGELA SCOTT
        Assistant United States Attorney
        Nine Executive Drive
        Fairview Heights, IL   62208
        (618) 628-3700 (office)
        (618) 628-3730 (fax)
        E-mail:   Angela.Scott@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 13-30070-DRH |
| | ) | |
| NEIL E. PURDY, | ) | |
| | ) | |
| Defendant. | ) | |

Certificate of Service

I hereby certify that on January 16, 2014, I electronically filed the **Government's Motion to Stay Order of Release and for *De Novo* Review of Release Order Pursuant to 18 U.S.C. 3145(a)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

William L Berry, Esq.

Respectfully submitted,

STEPHEN R. WIGGINTON
United States Attorney

s/*Angela Scott*
ANGELA SCOTT
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL   62208
(618) 628-3700 (office)
(618) 628-3730 (fax)
E-mail:   Angela.Scott@usdoj.gov

1